UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMELL JOSHUA-ALLEN BARBER,

                    Petitioner,                         Case No. 1:19-cv-498

v.                                                       Honorable Robert J. Jonker

RANDEE REWERTS,

                    Respondent.
_____/

### REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jamell Joshua-Allen Barber is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On December 12, 2016, following a four-day trial, an Ingham County Circuit Court jury found Petitioner guilty of armed robbery, first-degree home invasion, and felony firearm. On January 11, 2017, the court imposed concurrent sentences of 12 years, 6 months, to 25 years for armed robbery and 10 to 20 years for first-degree home invasion, consecutive to a sentence of 2 years for felony firearm.[1]

On June 6, 2019, Petitioner timely filed his habeas corpus petition raising seven grounds for relief, as follows:

I.      Petitioner's trial counsel rendered ineffective assistance when he failed to object to the State's "aid and abet" jury instruction, where the instruction did not address the Petitioner's advance knowledge that a co-conspirator made known that his intent was to graduate the criminal scheme from the underlying offense to an armed one.

_____

[1] Petitioner is also concurrently serving a 2- to 10-year sentence for larceny imposed in a separate Ingham County Circuit Court case. That conviction and sentence are not at issue in this petition.

II.     Petitioner's trial counsel rendered ineffective assistance when he failed to move for a directed verdict based on the insufficiency of the evidence to convict Petitioner of armed robbery and felony firearm.

III.    Petitioner's trial counsel rendered ineffective assistance when he failed to effectively cross-examine and impeach Neshawn Jackson for his contradictory testimony.

IV.     Petitioner's trial counsel rendered ineffective assistance where he failed to prepare for the case and failed to present any evidence or witnesses.

V.      The prosecutor committed misconduct where he used Brianna Wilson's testimony at trial which was highly prejudicial and irrelevant.

VI.     The prosecutor committed misconduct where he suborned perjury and then did not object to or correct it, amounting to a *Brady* violation where the state withheld testimony which could prove Petitioner's innocence.

(Pet., ECF No. 1, PageID.15–16.)  Respondent has filed an answer to the petition (ECF No. 11) stating that the grounds should be denied because they are procedurally defaulted, meritless, or both.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless. Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's crimes as follows:

On the morning of November 5, 2015, defendant and a group of young males planned and executed a coordinated attack on an older man in an attempt to rob the man's house.  After surveilling the man's house, two members of the group feigned a forced entry at the front door knowing that it would lure the man outside by the side entrance.  A three member group, including defendant, lay in wait for the man at the side door and viciously attacked him once he emerged.  The man fought back and retreated into his house, dragging the three attackers in with him.  The man broke free and dashed to his bed in the living room.  As he did so, one of the perpetrators pulled out a gun and shot at the man.  The shots missed, and the man was able to retrieve his gun from under his pillow, turn, and return fire.  The man's shots struck each of the three intruders.  One was shot in the hand, one in his

shoulder, and defendant was shot through his right leg.  The perpetrators ran off into a nearby wooded area, leaving a trail of blood.  Police eventually apprehended the group.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.406).

Petitioner directly appealed his convictions and sentences to the Michigan Court of Appeals.  Through the brief filed with the assistance of counsel, a *pro per* brief, and a motion to remand, Petitioner raised several issues, including the ineffective assistance of trial counsel and prosecutorial misconduct issues he raises in his petition.  The Michigan Court of Appeals affirmed the trial court by opinion issued April 17, 2018.

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the same issues he raised in the court of appeals.  By order entered October 30, 2018, that court denied leave to appeal.  (Mich. Order, ECF No. 12-11, PageID.587.)  Petitioner did not file a petition for certiorari in the United States Supreme Court.  (Pet., ECF No. 1, PageID.3.)  Instead, he timely filed this petition.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of

3

the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching

4

outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001).  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d

at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.    Prosecutorial misconduct

Petitioner contends that the prosecutor committed misconduct rendering Petitioner's trial unfair when the prosecutor:  (A) elicited testimony from Brianna Wilson regarding Petitioner's relationship with the other accused robbers to prejudice the jurors against Petitioner by establishing that Petitioner associated with unsavory characters; and (B) elicited false testimony from the driver, Neshawn Jakcson, regarding conversations among the group of participants before the incident.  To be entitled to habeas relief based on prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's alleged misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11–12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12–13; *Darden*, 477 U.S. at 181–82; *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935).

### A.    Guilt by association (habeas ground V)

One of the first witnesses the prosecutor called was Brianna Wilson.  She was the girlfriend of Justin Stewart, one of the other participants in the robbery.  (Trial Tr. II, ECF No. 12-6,

PageID.283.)  Ms. Wilson testified that she "hung out" with six of the seven participants at 1:00

a.m., the morning of the robbery.  (*Id*., PageID.283–285.)  She also saw one or more of the

participants at school later that morning.  (*Id*.)  Petitioner contends that the prosecutor offered this

testimony for the sole purpose of establishing Petitioner's guilt by his association with "unsavory

characters."  (Pet'r's *Pro Per* Supp. Br., ECF No. 12-10, PageID.535.)

Guilt by association has no place in the American criminal justice system.  *See United
States v. Peyton*, 183 F. App'x 539, 545 (6th Cir. 2006) ("Parties may not use a bare assertion of

gang association to imply criminal activity."); *see also United States v. Lopez-Medina*, 461 F.3d

724,    741–42    (6th    Cir.    2006)    ("Evidence    that    demonstrates    only    'guilt    by

association' . . . is irrelevant to the question of a defendant's actual guilt."); *United States v.

Shalash*, 259 F. App'x 754, 758 (6th Cir. 2008) ("It is axiomatic that guilt by association is an

insufficient basis on which to obtain or sustain a conviction.").  The Michigan Court of Appeals

implicitly acknowledged that it would be improper "to prejudice defendant by creating the

impression in jurors' minds that defendant had guilt by association due or defendant's relationship

with the perpetrators of the crimes."  (Mich. Ct. App. Op., ECF No. 12-10, PageID.417.)  But the

court determined that was not what happened in Petitioner's trial:

> The witness testified at trial that she was a friend of defendant and the other
> perpetrators of the crimes and that, on the morning before the crime, around 1:00
> a.m., the group gathered at her house.  They talked together for a while and then
> the boys left.  The witness's testimony served only to establish the existing
> relationship between defendant and the other perpetrators of the crimes.  It is clear
> from the record that the prosecutor never attempted or proved defendant's guilt
> merely by his association with the other perpetrators of the crimes.  Instead, the
> prosecutor presented substantial evidence that placed defendant at the scene of the
> crime and established that he actively participated in the robbery and home
> invasion.  Accordingly, the prosecutor did not commit prosecutorial misconduct as
> claimed by defendant.

(*Id.*)  The appellate court acknowledged that the prosecutor elicited testimony to establish Petitioner's association with the other participants, but the court concluded the fact of that association was not used to establish Petitioner's guilt.

In response to the court of appeals' opinion, Petitioner contends that the evidence was irrelevant (Pet'r's Appl. for Leave to Appeal, ECF No. 12-11, PageID.611–612), and Petitioner's knowledge of the other participants was undisputed (*Id.*, PageID.612).  Petitioner's claim that the evidence is irrelevant is meritless.  Petitioner's defense was premised on a claim that he was just getting a ride to school.  (Trial Tr. II, ECF No. 12-6, PageID.279–280.)  When the other people got out of the car, he got out of the car.  He was there, but that was the extent of his involvement: presence.  He was just in the wrong place at the wrong time.  He ended up getting shot while he was simply standing in the driveway.  The fact and the depth of the association between the participants certainly impacted the credibility of Petitioner's defense that he was just getting a ride to school and knew nothing of the planned robbery.  It was plainly relevant.  The testimony the prosecutor elicited from Brianna Wilson did not render Petitioner's trial unfair, even if it was prejudicial to his defense.  Accordingly, Petitioner has failed to demonstrate that the court of appeals' rejection of this prosecutorial misconduct claim is contrary to, or an unreasonable application of, clearly established federal law.  Petitioner is not entitled to habeas relief on this claim.

**B.    Perjured testimony (habeas ground VI)**

Petitioner next contends that the prosecutor knew that Neshawn Jackson's testimony was perjurious, yet he did nothing to correct the record.  Petitioner notes that Jackson's testimony at the trial was inconsistent with his testimony at the preliminary examination.  Specifically, at the preliminary examination, Jackson testified that the participants did not discuss the robbery in the vehicle after they picked up Petitioner.  (Prelim. Exam. Tr., ECF No. 12-2, PageID.200) ("Q

8

[W]hat did you guys discuss on the way to Pinewood?  A  I didn't discuss nothin'. . . . There was

no conversation.  Not that I recall.").  At trial, however, Mr. Jackson told a different version of the

events.  He testified that after picking up Petitioner the participants in the vehicle talked about

rushing the man who lived at the house and taking his marijuana.[2]  (Trial Tr. III, ECF No. 12-7,

PageID.354–355.)

"[D]eliberate deception of a court and jurors by the presentation of known false evidence

is incompatible with 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150,

153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).

> The knowing use of false or perjured testimony constitutes a denial of due process
> if there is any reasonable likelihood that the false testimony could have affected the
> judgment of the jury.  In order to establish prosecutorial misconduct or denial of
> due process, the defendants must show (1) the statement was actually false; (2) the
> statement was material; and (3) the prosecution knew it was false.

*United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989) (citations omitted).  Petitioner

bears the burden of demonstrating that the testimony was actually perjured.  *Id.*  "[M]ere

inconsistencies in testimony by government witnesses do not establish knowing use of false

testimony."  *Id.*

Petitioner has identified an inconsistency between the testimony at the preliminary

examination and the testimony at trial, but nothing more.  He has not shown that the trial testimony

was false or that the prosecutor knew it was false.  The Michigan Court of Appeals reached the

same conclusion:

> We agree that the witness's trial testimony differed from his preliminary
> examination testimony.  During the preliminary examination, the witness testified

---

[2] There is some question as to whether the testimony was actually inconsistent.  The questioning
at the preliminary examination was focused on whether the participants discussed the robbery in
the vehicle; the questioning at the trial went beyond discussions in the vehicle to include
discussions outside the vehicle.  Nonetheless, it is difficult to reconcile the certainty of Jackson's
testimony at the preliminary examination with his testimony at trial.

that no discussion took place during the ride to the robbery location.  At trial, the witness testified that as they drove to their destination, the group planned to rush the man who lived at the house and steal marijuana.  During cross-examination at trial, defense counsel asked the witness whether he heard defendant say anything while he rode in the vehicle. The witness testified that he could not remember.  On redirect examination, the witness affirmed that defendant was not the person talking about the robbery during the ride, but others gave orders about how they were going to do the robbery.

Despite the difference in testimonies, there is no basis to conclude that the witness perjured himself at trial.  The record reflects that the witness was interrogated by the prosecutor in greater depth during trial and that, as a result, the witness provided more detailed information about what transpired before, during, and after the crimes were committed.  The witness's trial testimony differed from his terse responses to the prosecutor's questions during the preliminary examination regarding whether discussion took place on the ride to the robbery.  Although the testimonies differed, both were given under oath, and there is no basis to conclude which was true.  Therefore, there is no basis to conclude that the witness [] perjured himself at trial, let alone to conclude that the prosecutor knowingly allowed the witness to do so.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.416.)  In response, in Petitioner's submission to the Michigan Supreme Court, he claims the trial testimony was false because it was bought with the plea deal.  (Pet'r's Appl. for Leave to Appeal, ECF No. 12-11, PageID.614.)  Petitioner's claim that the witness had a reason to lie falls far short of showing that the testimony at trial was, in fact, false.  Petitioner has only pointed out the inconsistency.  That is not enough to show the prosecutor's knowing use of perjured testimony.

Petitioner has failed to show that the court of appeals' rejection of his "perjured testimony" claim is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IV.    Ineffective assistance of trial counsel

Petitioner claims that his trial counsel failed him in several ways.  The court of appeals rejected Petitioner's claims applying the following standard:

To prevail on a claim of ineffective assistance, a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the

10

outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted).  Further, defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

(Mich. Ct. App. Op., ECF No. 12-10, PageID.407.)  The appellate court cited state authority as the source of that standard, but the cited state authority adopted its standard from the federal constitutional law clearly established by *Strickland v. Washington*, 466 U.S. 668 (1984).  *People v. Trakhtenberg*, 826 N.W.2d 136, 143 (Mich. 2012) (citing *People v. Armstrong*, 806 N.W.2d 676, 680 (Mich. 2011), and *People v. Pickens*, 521 N.W.2d 797, 802–10 (Mich. 1994), both relying upon *Strickland*).

In *Strickland*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, considering the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance

11

was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The Michigan Court of Appeals applied the *Strickland* standard; thus it cannot be said that the court applied a standard contrary to clearly established federal law.  To prevail, therefore, Petitioner must show that the appellate court applied the standard unreasonably.  That is a difficult showing because, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under Section 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Against that backdrop, the Court will consider Petitioner's specific challenges to his counsel's performance.

### A.  Failure to effectively cross-examine Neshawn Jackson (habeas ground III)

Petitioner argues that, because of counsel's failure to effectively impeach Mr. Jackson regarding the inconsistency discussed above, *see* § III.B., the jury was free to believe that Petitioner had the necessary intent to commit the crimes of which he was convicted.  (Pet'r's Appl. for Leave to Appeal, ECF No. 12-11, PageID.603–605.)  Had counsel properly impeached Mr. Jackson, Petitioner contends, the jurors would have been compelled to conclude that there was no discussion

12

of the crime after Jackson picked up Petitioner and that Petitioner was merely present when the others committed the crimes.

The court of appeals panel was not convinced by Petitioner's argument:

> Defendant also argues that defense counsel failed to effectively cross-examine one of the perpetrators of the crimes in this case who testified against defendant. Defendant contends that the witness's preliminary examination testimony contradicted his trial testimony and that his trial testimony was false and undermined defendant's mere presence defense. Decisions whether and how to cross-examine witnesses are matters of trial strategy. *People v Dunigan*, 299 Mich App 579, 589–590; 831 NW2d 243 (2013).

> At trial, the subject witness testified that, while the group was in the car before committing the crimes in this case, two perpetrators in the group gave orders about how the group was going to conduct the robbery. The record indicates that during cross-examination, defense counsel attempted to elicit testimony that the perpetrators of the crime actually did not discuss anything as they rode to the location of the robbery, which was what the witness testified to during the preliminary examination. The witness did not recall his previous testimony, and defense counsel initially sought to refresh the witness's recollection, but then simply had the witness read aloud the preliminary examination question and answer in which he testified that he did not hear defendant say anything during the commission of the crimes. Defense counsel next elicited an admission from the witness that defendant did not have a gun. The prosecution followed up by having the witness reaffirm his testimony that two others in the group gave orders about how the group was going to conduct the robbery.

> Defendant argues that defense counsel's failure to impeach the witness with his prior statement that no conversation occurred in the car before the crime deprived defendant of a mere presence defense because it evidenced that defendant was aware of the group's intent to commit a crime. However, a review of the record establishes ample evidence to refute this claim. The subject witness's testimonies at the preliminary examination and at trial placed defendant at the scene and provided that defendant actively participated in the crimes. The witness's trial testimony clarified that, once the perpetrators of the robbery arrived at the location, five members of the group first surveilled the victim's house from the back, then they all returned to the vehicle and split into two groups that carried out separate and distinct assignments to commit the robbery. The evidence established that defendant went with two others around the back of the house. The evidence indicated that the group planned and coordinated an attack on the victim. The witness's testimonies at the preliminary examination and at defendant's trial did not vary on these relevant facts. Further, the victim testified that attackers hit him from behind when he stepped out of his house to investigate the attempted forced entry at the front door. The three attackers entered his house, whereupon the victim

shot defendant while defendant was inside the house. The police found and collected defendant's blood outside the house and from the trail into the woods.

We believe that the totality of the evidence presented at trial established that planning and coordination preceded the crimes and that defendant played the part assigned to him, regardless of whether the planning occurred in the vehicle or outside it after they arrived. Moreover, defense counsel's cross-examination of the witness, albeit not a particularly destructive cross-examination, elicited two factual clarifications to defendant's benefit. Even if defense counsel had exposed in greater detail contradictions in the witness's testimony, the effectiveness of such cross-examination would have been negligible given the overwhelming[] evidence, other than the witness's testimony, that worked against defendant's mere presence defense. Therefore, there is not a reasonable probability that the outcome would have been different had defense counsel impeached the witness with his preliminary examination testimony. *Trakhtenberg*, 493 Mich at 51.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.408–409) (footnote omitted).

Petitioner does not contest the court of appeals' description of the record evidence; nor does he contest the court's description of counsel's performance on cross-examination. Instead, Petitioner insists that, without the evidence that the participants discussed the plan while Petitioner was present, there is no evidence that Petitioner knew anything about the crime before it happened. Essentially, Petitioner maintains that absent Jackson's mention at trial of conversations planning the crime, the evidence shows Petitioner was really nothing more than a bystander. Petitioner is simply wrong. He ignores the jurors' ability to make reasonable inferences even in the absence of direct evidence.

With or without a preceding discussion of the plan, Petitioner did not dispute his association with the other participants, his presence in the vehicle with them, that five participants left the vehicle, or that a group of two—Monte and Xavier—went to the front door and a group of three—Justin, Antonio, and Petitioner—went to the back. Petitioner cannot dispute the facts to that point, because his blood trail begins near the back door to the home. Petitioner implicitly asked the jury to believe that he merely stood in the driveway, blissfully unaware, as the events unfolded.

14

Petitioner's version of the events is not impossible, but it does require disbelieving the testimony of the victim that three boys attacked him, three boys forced their way into the house, one of the three pointed a gun at the victim, the victim fired back at the three invaders while they were in his home, and they fled.  Three boys suffered gunshot wounds:  Justin, Antonio, and Petitioner.  The court of appeals concluded that there was ample evidence to infer that Petitioner's involvement went beyond the mere presence he offered as a defense.  That conclusion is well-supported by the record, and the appellate court's further conclusion that there was no likelihood of a different result even if counsel further highlighted the inconsistency between Jackson's testimony about planning discussions before the crime, is neither contrary to, nor an unreasonable application of, *Strickland*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

**B.    Counsel's failure to object to "aiding and abetting" jury instruction (habeas ground I)**

Petitioner contends his counsel rendered ineffective assistance because counsel failed to object to the prosecution's aiding and abetting theory or the court's reading of the aiding and abetting instruction.  The court of appeals concluded that the evidence supported the theory and the instruction:

> In his Standard 4 brief, defendant argues that defense counsel provided ineffective assistance by not objecting to the prosecution's aiding-and-abetting theory.  The evidence at trial, however, supported defendant's convictions for aiding and abetting first-degree home invasion and armed robbery.  MCL 767.39 provides:
>
> > Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense.
>
> Three elements are required to convict a defendant under an aiding-and-abetting theory of prosecution:
>
> > (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that

15

assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (citation and quotation marks omitted).]

This Court clarified in *People v Pinkney*, 316 Mich App 450, 472; 891 NW2d 891 (2016), that the aiding-and-abetting issue may be put before the jury as long as evidence existed that tended to establish that more than one person committed the crime. In this case, defendant cannot reasonably dispute that the group worked together to commit the crimes. The prosecution presented overwhelming evidence that defendant and two others attacked the victim, entered his house to rob him, and then fled after being shot. The record unequivocally established that defendant performed acts and actively assisted the others regarding the commission of the crimes and the group all intended to commit the crimes. Had defense counsel objected to the prosecution's use of the aiding-and-abetting theory, such objection would have been futile. Defense counsel was "not required to make a meritless motion or a futile objection." *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003). Counsel's performance in this regard did not fall below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 51.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.409–410.)[3]

The Due Process Clause requires that every element of the charged crime be proven beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). When a jury is not properly instructed as to the elements of the charged crime, the due process right to proof beyond a reasonable doubt is implicated. *Sandstrom v. Montana*, 442 U.S. 510 (1979). It is the prerogative

---

[3] Some part of Petitioner's argument is premised on a claim that he was never given notice that the prosecutor was pursuing a theory that Petitioner was guilty as an aider and abettor. Although the court of appeals did not expressly address that argument as part of its analysis of this ineffective assistance issue, the argument is meritless. In Michigan, there is no distinction between principals and accessories. As a result, aiding and abetting is an alternative theory of guilt on a direct charge. Mich. Comp. Laws § 767.39; *see also People v. Mann*, 236 N.W.2d 509, 511 (Mich. 1975) ("[a] person who aids and abets is guilty as a principal."). Because "he who aids and abets is [also] a principal," a defendant charged as a principal is on notice that, if the evidence indicates he was an accessory to others, he may be convicted on the direct charge as an aider/abettor. *Mann*, 236 N.W.2d at 511 (citing *People v. McKeighan*, 171 N.W. 500 (Mich. 1919) (holding information charging defendant as a principal supported his conviction as an aider/abettor)). The Sixth Circuit has concluded that the "notice" argument offered by Petitioner is "meritless." *Hack v. Elo*, 38 F. App'x 189, 193 (6th Cir. 2002).

16

of the state, however, to define the elements of the crime and the federal courts are bound by their determination.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson v. Virginia*, 443 U.S. 307, 324 n.16 (1979) ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses.  Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  It is also the prerogative of the state to determine what charge or charges to bring and what theories of culpability to present to the jury:

> In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.  Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, "the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation" so long as "the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."  *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446.

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (footnote omitted).

The court of appeals concluded that seeking to establish Petitioner's culpability of the crimes charged as an aider and abettor was appropriate under state law based on the evidence.  Any objection by counsel, the appellate court reasoned, would therefore be futile.  The decision to forego a futile objection would not rise to the level of ineffective assistance.  The state court's conclusions regarding counsel's performance are consistent with *Strickland* because "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

C.      **Counsel's failure to move for a directed verdict (habeas ground II)**

Petitioner next claims that his counsel was ineffective because counsel failed to move for a directed verdict at the close of the prosecution's proofs.  The success of Petitioner's motion turns on whether the prosecutor offered sufficient evidence to justify Petitioner's conviction beyond a reasonable doubt.  *See, e.g., People v. Riley*, 659 N.W.2d 611, 614 (Mich. 2003) ("Because the prosecution submitted sufficient evidence . . . corroborating [defendant's] participation in the murder as an aider and abettor, defense counsel was not ineffective for failing to make a motion for directed verdict.").  The Michigan Court of Appeals flatly rejected Petitioner's claim:

> Defendant also argues in his Standard 4 brief that defense counsel provided ineffective assistance by not moving for a directed verdict.  Defendant relies on the fact that no gun was found and that the victim did not identify defendant as one of his attackers.  Defendant ignores the substantial evidence that put defendant at the scene of the crime and established that he actively participated in the commission of the armed robbery and home invasion, got shot, and left a blood trail to his location in the woods.  A motion for a directed verdict would have been futile.  Defense counsel was "not required to make a meritless motion or a futile objection."  *Goodin*, 257 Mich App at 433.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.410.)

In *Jackson*, 443 U.S. at 307, the Supreme Court announced the following standard for resolving sufficiency claims:  the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319.  The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id*.  Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence.  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the

18

prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Petitioner contends that the evidence was insufficient and, therefore, that a directed verdict motion was appropriate, because it is possible to interpret the evidence in a light that favors him and conclude that he was merely present. Petitioner turns the sufficiency standard on its head.

Viewing the evidence in a light that favors the prosecution, there is plainly sufficient evidence to support Petitioner's convictions of the charged crimes beyond a reasonable doubt. *Jackson* holds that it is the jury's province to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. Certainly, the key inference identified by the court of appeals— that the third unidentified person who rushed the victim, followed him into the house, was fired upon, shot, and then fled, was Petitioner—rationally flows from the underlying facts. To succeed in his challenge, Petitioner must show that the identified inferences are irrational. *Id*. at 656. He has not. Instead, his argument depends on ignoring the reasonable inferences identified by the court of appeals and adopting other inferences that favor him.

Counsel had no hope of prevailing on a motion for directed verdict. As noted above, it is neither professionally unreasonable nor prejudicial to forego a meritless motion or objection. Petitioner has failed to show that the Michigan Court of Appeals' determinations of fact in support of the sufficiency analysis or the ineffective assistance analysis are unreasonable on the record. Moreover, Petitioner has failed to show that the appellate court's determinations regarding

sufficiency or ineffective assistance are contrary to, or an unreasonable application of, *Jackson* or *Strickland*. Accordingly, he is not entitled to habeas relief.

### D.    Counsel failed to prepare Petitioner's defense or call witnesses (habeas ground IV)

Finally, Petitioner contends that his counsel failed him by not preparing a defense as demonstrated by the fact that counsel failed to present any evidence or witnesses. (Pet'r's Appl. for Leave to Appeal, ECF No. 12-11, PageID.609.) The court of appeals rejected Petitioner's contention:

> [D]efendant argued that defense counsel's failure to communicate with him led to defense counsel not calling favorable witnesses on defendant's behalf. However, in none of those filings did defendant identify a single witness whom defense counsel should have but failed to call to testify. Nor does defendant provide what the unidentified witnesses' testimonies would have been or how their testimonies would have established, or even assisted, a defense. The "failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). Defendant fails to specify what defense, if any, the purported failure to call these unidentified witnesses deprived him of. Accordingly, defendant has failed to establish any factual predicate for his claim of ineffective assistance in this regard. *Hoag*, 460 Mich at 6.

(Mich. Ct. App. Op., ECF No. 12-10, PageID.407–408) (footnote omitted).

The court of appeals rejected Petitioner's claim, in part because he failed to identify what witnesses counsel might have called to support the defense. In his application for leave to appeal to the Michigan Supreme Court, Petitioner responded by naming four witnesses: Monte Davidson, Justin Stewart, Antonio Thompson, and Antonio's sister, Laquita Thompson. (*Id.*) Laquita, Petitioner claimed, would testify that the other participants were secretive regarding their ambitions and that Petitioner only went with them out of ignorance of their intent. (*Id.*) Petitioner attached Ms. Thompson's affidavit which offered averments which were inadmissible hearsay statements by Petitioner, even going so far as to describe how Petitioner felt. (Aff., ECF No. 12-11, PageID.616–617.)

20

Petitioner did not supply affidavits from any of the other three witnesses. Nonetheless, he reports that Antonio Thompson would testify that he never told Petitioner that Antonio had a weapon or that anyone was planning a robbery. According to Petitioner, Monte Davidson would have testified that he never told Petitioner any details of the robbery that would take place. And Justin Stewart, Petitioner claims, would testify that Petitioner did not participate in the attack on the victim.

Ms. Thompson's proposed testimony is entirely inadmissible because most of it is hearsay, and it otherwise contains information of which she could not possibly have firsthand knowledge. At best, Ms. Thompson could testify that she was present when the others picked up Antonio Thompson and Petitioner. That testimony was undisputed and would not bolster Petitioner's defense at all.

The other witnesses' testimony is entirely speculative. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted); *see also Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) ("The salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice.").

Moreover, there is no record support for Petitioner's implicit claim that counsel did not make every effort to investigate the testimony of these individuals. In short, Petitioner has failed to show that the court of appeals' rejection of this claim is contrary to, or an unreasonable application of, the federal law clearly established in *Strickland*. Accordingly, he is not entitled to habeas relief.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that jurists of reason could . . . conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated: June 9, 2021                                          /s/ Sally J. Berens
                                                             SALLY J. BERENS
                                                             U.S. Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).